(No. 35509.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMEY SCOTT, Plaintiff in Error.

*Opinion filed October 31, 1960.*

JAMES P. PIRAGINE, of Chicago, for plaintiff in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicage, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and JAMES J. GLASSER, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Defendant, Jamey Scott, was tried by the court without a jury in the criminal court of Cook County and convicted on two indictments charging him with the crime of attempted burglary. He has sued out a writ of error from this court to review the judgments of conviction.

He contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt and that he was deprived of counsel of his own choice. One indictment charged the defendant with an attempt to commit burglary by breaking and entering a building owned by Harry Lasker, and the other indictment charged that the defendant attempted to commit burglary by breaking and entering a store owned by Sultan Oliver. The case involving the property of Sultan Oliver was tried first. Oliver testified that he closed his store at about eight o'clock in the evening and locked the front door. He went to sleep in the living quarters in the back of the store and was awakened at about 5:30 or 6:00 the following morning by the sound of breaking glass from the skylight on the roof of the

store. He called the police and they came to the store, talked to Oliver, and went out the back door. When they returned in about twenty to thirty minutes, the defendant was in their custody. A police officer, Edward Sheridan, testified that he received a radio message at about 6:00 or 6:30 in the morning and went to Oliver's store. After a conversation with Oliver, he went out the back door, looked up and saw a man on the roof. He saw the man run across the roof top and saw him jump off the roof onto a truck that was parked in the alley and then jump off the truck to the ground. The officer pursued him and placed him under arrest. At the trial, the police officer identified defendant as the man whom he had seen on the roof and whom he had arrested.

At the conclusion of the officer's testimony, the trial judge stated that there appeared to be some confusion in that the indictment which charged the attempted burglary of Oliver's store showed that Lasker was the complaining witness and the indictment which charged the burglary of Lasker's store showed that Oliver was the complaining witness. Following a colloquy between the court and counsel, defendant's counsel said that he was aware of this discrepancy and that he had planned to take advantage of it by making a motion at the close of the State's case. The trial judge stated that it was apparent that it was merely a mistake in typing the indictments and that the names of the witnesses were inadvertently placed on the wrong indictments. The court asked defendant's counsel whether there was any claim of surprise and defendant's counsel replied that there was and that he was not prepared to go ahead with the case. The trial judge then granted a continuance. When the court reconvened after the continuance, there was some conversation between the court and defendant's counsel about the mix-up between the indictments, and at the conclusion of this conversation defendant's counsel stated that he had talked to the defendant about the

situation and explained it to him. He then asked the defendant whether he wanted to proceed with the trial, knowing that there had been the mix-up on the indictments. The defendant replied that he wanted to proceed with the trial but stated that he had two witnesses whom he wanted to appear for him and one of the witnesses was ill and could not appear. The court then continued the case on the defendant's motion for two weeks.

When the court next reconvened, defendant's counsel stated to the court that he had come to a serious disagreement with the defendant and that the defendant felt that he was not being properly represented. Counsel stated that defendant wanted him to make some investigation of matters that he, as an attorney, did not believe was necessary for a proper defense. The defendant agreed that he had had a disagreement with his attorney and did not want him to represent him any further. The defendant stated that he was innocent but his attorney wanted him to take a one-to-three-year sentence on a plea of guilty. Defendant told the court that he did not want to do that because he was already on parole and wanted to save his parole. Defendant's attorney stated that he had talked with defendant about a plea of guilty and had pointed out to the defendant that the State would probably recommend a minimum of one and a maximum of three years. Counsel then started to tell the court about the fact that defendant was already on parole but stated that he did not believe he should say that because it might prejudice the defendant. The court denied the request for the change of counsel and ordered that the trial proceed.

For the defense, one James Armand testified that he worked for the post office and that on the morning of the crime he and defendant had gone to the post office at about a quarter to six in an attempt to obtain work for the defendant. He left the defendant shortly before six and did not know where he went after that. The defendant

testified that he had gone to the post office with Armand and then went to another place trying to find employment where he talked to the manager for a few minutes and then walked down the street. He testified that he had gone into the alley next to Oliver's store to relieve himself, and that while he was so engaged officer Sheridan approached him and told him that there had been a robbery committed in the vicinity and placed him under arrest. Defendant testified that he told the officer that he had only stopped in the alley to relieve himself, but that the officer called him names and told him that he was going to pin the burglary on him. Defendant denied that he had ever been on the roof of the building and denied that he had attempted to break and enter the building. Defendant testified that at the preliminary hearing in felony court the police officer had not testified that he saw defendant on the roof of the building. In rebuttal the officer testified that he had stated in the felony court that he saw defendant on the roof. During the final arguments, defendant's counsel argued that the testimony of the arresting officer was conflicting because of this alleged discrepancy. The court stated that he wanted to be fully advised about the matter and requested that a transcript of the proceedings in felony court be obtained so that it could be determined what the officer's testimony was at that hearing. The case was continued for a short time so that the transcript of that testimony could be obtained.

However, because the complaining witness in the other indictment was present in court, it was determined that the second indictment should be disposed of at that time so that the complaining witness would not have to return. Before trial on that indictment defendant's counsel stated that in view of the remarks defendant had made during the course of the other trial he thought that defendant should be heard as to whether or not he wanted a different counsel. The defendant stated that he would accept the same counsel stating that because he had him on the other indictment, he might

as well have him on this one. He specifically stated that he was agreeable to having the same attorney represent him. The trial then proceeded on the second indictment. Harry Lasker, the owner of the other store building, testified that his building adjoined Oliver's building. He had closed and locked all the doors and windows of his cleaning shop at about 7:00 in the evening and had noticed that the skylight was in good condition. When he returned to his store at about 8:00 the following morning, he noticed that half of the skylight was broken out. He stated that about two weeks before this occurrence the defendant had been in his store, bringing some clothes in to be cleaned and that defendant had come in later that same week and picked up the cleaning. It was then stipulated that the testimony of the police officer on this indictment would be the same as his testimony on the other indictment and it was also stipulated that the defendant's testimony would be the same. At the conclusion of the hearing on this indictment the court stated that this case would likewise be continued for a time so that he could examine the transcript of the proceeding in the felony court.

When the court reconvened the assistant State's Attorney handed defendant's counsel a copy of the transcript of the felony court hearing and defendant's counsel showed it to defendant and asked him whether the transcript was correct. Defendant replied that the transcript was incorrect because it stated that the arresting officer had testified that he saw defendant on the roof but defendant claimed that no such testimony was actually given in felony court. There was then some discussion about the necessity of bringing in the court reporter. Defendant's counsel pointed out to defendant that if the court reporter was brought in, he doubtless would testify that the transcript was an accurate record of the testimony given at the hearing and inquired as to whether defendant would state under oath that this testimony was not given. Defendant then replied that he

did not hear this testimony. The transcript was then admitted into evidence without objection. Defendant's counsel stated that he would normally object to the introduction of this evidence but since the defendant had asked to have the transcript prepared and had asked that it be brought into court he was not in a position to object. Defendant's counsel stated that it was the defendant's position that the transcript could be a true and accurate record but that the defendant did not hear the testimony about his being on the roof. Defendant agreed that this was a correct statement of his position. The court then entered a finding of guilty on both indictments.

We are of the opinion that the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt. The testimony of officer Sheridan that he saw defendant on the roof of the buildings where the skylights were broken and that defendant attempted to escape by running across the roof was sufficient proof of an attempt to commit burglary. Opposing this testimony was defendant's denial that he was ever on the roof. This presented a question of the credibility of the witnesses, which was a matter for the trial judge to determine. We shall not disturb his finding.

The contention that defendant was deprived of counsel of his own choice finds no support in the record. It is true that defendant expressed dissatisfaction with his attorney in the midst of the trial on the first indictment. Apparently, this dissatisfaction arose because defendant's counsel had discussed the possibility of pleading guilty and obtaining a light sentence. There is no contention that defendant's counsel insisted that he plead guilty and the record shows that the attorney was prepared to and did represent defendant throughout the trials on both indictments. The fact that the possibility of a plea of guilty was discussed does not demonstrate the incompetence of defendant's appointed counsel and was not a sufficient reason for the trial judge

to grant defendant's request for a change of attorneys in the midst of the first trial. Furthermore, we note that on the second indictment defendant expressly stated that he agreed to have his original attorney represent him on the trial of the second indictment.

The judgments of the criminal court of Cook County are affirmed.

*Judgments affirmed.*